UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 20-CR-10197-LTS-5 |
| | ) | |
| DAMIAN CORTEZ, | ) | |
| Defendant | ) | |

### DEFENDANT'S MOTION TO DISMISS COUNT #7 (MANN ACT VIOLATION) FOR IMPROPER VENUE

Now comes Damian Cortez and hereby moves that this Honorable Court dismiss Count #7 for lack of venue. Mr. Cortez moves under U.S. Const. Art. III, § 2, cl. 3 and U.S. Const. amend. VI, and Federal Rules of Criminal Procedure §§ 12(b)(3)(A)(i) and 18.

Mr. Cortez requests a hearing.

### A. INTRODUCTION

Mr. Cortez is charged under 18 U.S.C. §§ 2421 and 2 with a Mann Act crime[1]. Generally speaking, 18 U.S.C. § 2421(a) prohibits interstate or foreign transportation of an individual for the purposes of prostitution[2]. A superseding indictment returned on October 14, 2020 alleges:

> On or about October 28, 2017, in the District of Massachusetts and elsewhere, the defendant,
>
> (5) DAMIAN CORTEZ,
>
> knowingly transported Jane Doe in interstate commerce, from Massachusetts to Maine, with the intent that Jane Doe engage in prostitution and sexual activity for which a person can be charged with a criminal offense.
>
> All in violation of Title 18, United States Code, Sections 2421 and 2. (Doc. No. 145)

---

[1] Mr. Cortez also stands accused of Possession with Intent to Distribute Fentanyl, though that count is not relevant to this motion.
[2] The terms "Mann Act" and "Crossing State Lines for Purposes of Prostitution" will be used interchangeably.

Mr. Cortez challenges venue in this case in that the incident that gave rise to this count did not occur in, touch, or otherwise involve, in any way, the District of Massachusetts.

### B. RELEVANT FACTUAL BACKGROUND

On October 28, 2017, local police in Westbrook, Maine conducted an undercover prostitution investigation. Searching advertisements on Backpage.com, a detective found two (2) separate posts. Though the posts promoted different women, the promotional language had "similar verbiage." (Doc. No. 1-1, ¶ 85). The detective scheduled a date with a woman who was advertised as "Bella." (Id.). It was arranged that Bella would meet the detective at a specific location in Westbrook; Bella was to arrive in an Uber. (Id.).

Other detectives established surveillance in the meeting area. (Id. at ¶86). The police stopped the car in which Bella was riding. The driver was interviewed by the police. (Id.). The driver was indeed working for Uber. He told the police that the ride was ordered from an account with the name "Damian." His pick-up location was a hotel in South Portland, Maine. (Id.).

Bella, an adult female, was also interviewed by police. "Bella" was a fake name; her real name, omitted here, bears the initials "AH." (Id. at ¶87). According to police, AH maintained that "Damian" was her "boyfriend/pimp" and that he had forced her into prostitution. (Id.). "Damian" was later identified as Damian Cortez. AH told police that she, Damian, Moses Cabral, Delven Carvalho-Centeio and another woman named Amanda, were staying at a hotel in South Portland, Maine. (Id.). AH added that the group had been "traveling around New York and New England in a rented black SUV staying at different motels for a few days at a time where they would place ads on Backpage.com and arrange prostitution dates." (Id.). AH told police that the group had been "traveling around New York and New England…in a rented black SUV…." (Id.). Records showed that the SUV was rented by Moses Cabral in Boston. (Id.). At no point did AH mention that they had been to or traveled through Massachusetts.

C. **PROCEDURAL BACKGROUND**

On October 30, 2017, Damian Cortez, Moses Cabral, Delven Carvalho-Centeio, and "Amanda" were charged in Maine in Cumberland County Court (CUMCD-CR-2017-06297) with Aggravated Sex Trafficking. (Exhibit 1 – Docket Record). On February 9, 2018, the case was dismissed. On February 12, 2018, a finding entered on the docket as follows "[t]he necessary witness in the case cann[o]t be located despite an active warrant for her arrest. The case cannot proce[e]d to grand jury with her and the time to bring the case to grand jury has passed." (Ex. 1, p. 2).

On June 15, 2020, Messrs. Cortez, Cabral, and Carvalho-Centeio were charged by criminal complaint in this court. (Doc. No. 1). All three were accused under 18 U.S.C. § 2421, Crossing State Lines for the Purposes of Prostitution, based on the incident in Westbrook, Maine. In total, fifteen (15) men were charged with various crimes, all of which were alleged to be connected, in varying degrees, to the NOB street gang. (See "Affidavit of Daniel Campbell," Doc. No 1-1).

On September 16, 2020, a Grand Jury returned an indictment against Mr. Cortez alleging a Mann Act violation. (Doc. No 115). Four (4) other men were accused in the same indictment, though their charges were RICO related. No others were accused of a Mann Act crime.

On October 14, 2021, a Grand Jury returned a superseding indictment. (Doc. No 145). In this instance five (5) more defendants were added. All new defendants were charged with RICO Conspiracy. None were charged with a Mann Act crime. No new charges were added against Mr. Cortez.

On January 20, 2021, Mr. Cabral was charged by Information with RICO Conspiracy. (21-cr-10023-LTS, Doc. N0 159). He was not charged with a Mann Act violation.

On February 23, 2021, Mr. Carvalho-Centeio was charged by Information with RICO Conspiracy. (21-cr-10062-WGY, Doc. No. 163). He was not charged with a Mann Act violation.

D. **Law and Argument**

### a. Introduction

The indictment against Mr. Cortez is insufficient to establish that the crime of Crossing State lines for the Purposes of Prostitution occurred in, or through, Massachusetts. Under First Circuit caselaw, a Motion to Dismiss an indictment rests on the question "whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense." United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012). Though this standard may appear difficult for a defendant to overcome, the language used in this particular indictment fails to state a crime with adequate specificity.

### b. Constitutional, Statutory, and Federal Rules Bases for Challenge

Article III of the Constitution requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, cl. 3. Similarly, the Sixth Amendment guarantees the right to an "impartial jury of the State and district where the crime shall have been committed." Under 18 U.S.C. § 3237, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." Likewise, Mr. Cortez has a statutory right to have his case heard in "a district where the offense was committed." Fed.R.Crim.P. 18. The District of Massachusetts and the physical boundaries of the Commonwealth of Massachusetts are one and the same.

### c. Challenge

The crime occurred primarily in Maine, and somewhat in New York and New England generally, but not specifically in Massachusetts. "Venue in a criminal case is not an arcane technicality. It involves 'matters that touch closely the fair administration of criminal justice and public confidence in it.'" United States v. Salinas, 373 F. 3d 161 (2004), citing United States v. Johnson, 323 U.S. 273, 276 (1944). "The 'locus delicti' must be determined from the nature of the crime alleged

and the location of the act or acts constituting it." Salinas at 164, citing United States v. Anderson, 328 U.S. 699, 703 (1946).

The elements of the crime of Transportation Across state Lines for Purposes of Prostitution are as follows: "First, that [the defendant] knowingly transported an individual in interstate commerce; and second, that at the time of such transportation [the defendant] intended the individual [whom] he transported would engage in prostitution." United States v. Blanchard, 867 F.3d 1, 12 (1st. Cir. 2017). Mann Act culpability in this case is alleged under two theories – liability as the principal and liability as an aider and abetter. (18 U.S.C. §§2421 and 2). Under the prinicipal theory, the defendant must have "knowingly transport[ed]" a woman across state or international lines. 18 U.S.C. § 2421. "The statutory language does not literally extend to 'causing' the transportation." United States v. Footman, 215 F.3d 145, 153 (2000). Under the aiding and abetting theory, it is sufficient that a defendant causes another person to be transported across state lines for the purpose of prostitution. *See* 18 U.S.C. § 2(b). Under either theory, transportation is one half of the crime. The second half of the crime requires the defendant to have the intent that the other person be prostituted.

Count # 7 of the indictment states that Jane Doe was transported from Massachusetts to Maine, yet the language, sparse as it is, that supports that count is underwritten by a set of facts that suggest otherwise.

The criminal complaint shows that Westbrook police officers comprised all of the law enforcement officers involved in the investigation. AH was stopped in a car in Westbrook. She told police that she had been staying at an Econo Lodge in South Portland, Maine with Mr. Cortez and the others. (Doc. No. 1-1, ¶87). AH did not state the date in which she began working. Nor did she tell investigators if she had been with the group for the entirety of the trip. AH did not specify if the group stayed, worked, or posted ads in Massachusetts, nor did she state whether the group traveled through the Commonwealth. It is true that the vehicle in which the group was traveling – the black SUV – was rented in Boston. Yet, there is no evidence that Mr. Cortez nor AH was present for when the vehicle was obtained.

"A criminal defendant cannot be tried in a distant, remote, or unfriendly forum solely at the prosecutor's whim." <u>Salinas</u> at 164. It appears to the defendant that the reason the Mann Act charge was brought was that it was part and parcel of the NOB prosecution. (*See Doc. No. \_\_\_\_\_ "Defendant's Motion to Sever"*). Importantly, Damian Cortez is not charged with Conspiracy to Cross State Lines for Purposes of Prostitution. With Mr. Cortez standing alone on this count, combined with the fact that he is not charged with RICO Conspiracy, and therefore not linked to the gang, it appears that this charge simply does not belong in this court.

E. <u>Conclusion</u>

For the foregoing reasons, Count #7 should be dismissed against Damian Cortez.

DAMIAN CORTEZ,
By his attorney,

Date:  September 13, 2021

*/s/Henry Fasoldt*
C. Henry Fasoldt (BBO# 667422)
185 Devonshire Street
Suite 302
Boston, MA 02110
henry@bostondefenselaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent to the registered participants as identified on the Notice of Electronic Filing (NEF) on September 13, 2021.

/s/ Henry Fasoldt
C. Henry Fasoldt

**CERTIFICATE OF CONFERENCE**

I "conferred and have attempted in good faith to resolve or narrow the issue" in this motion under Local Rule 7.1(a)(2). In a conversation with AUSA Michael Crowley, the government stated that it opposes the motion.

/s/ Henry Fasoldt
C. Henry Fasoldt