UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Crim. No.  20cr10197-LTS |
| ) | |
| DAMIAN CORTEZ, ) | |
| ) | |
| Defendant. ) | |

### GOVERNMENT'S OMNIBUS OPPOSITION

The Government hereby opposes the three, related motions filed by Defendant referenced in the docket as Document Numbers 292, 293, and 294.  All three motions fail as a matter of law and should be denied.

### FACTUAL BACKGROUND[1]

Defendant is a member/associate of the NOB street gang.  Defendant was targeted in an investigation of the NOB street gang, which was involved in a wide range of crimes including: (1) violent crimes, (2) drug trafficking, (3) prostitution and (4) firearms crimes.  One of the primary drugs trafficked by the NOB gang were blue fentanyl pills.  These pills were manufactured to appear to be oxycodone pills – fentanyl is a far more powerful and dangerous opioid than oxycodone, but is also a cheaper drug to acquire.  These blue fentanyl pills were (1) seized from various NOB members/associates during the investigation, (2) identified as being distributed by NOB gang members/associates in seized electronic communications, and (3)

---

[1] The Factual Background is a brief summary of some of the evidence against Defendant and is not a recitation of all of the evidence against Defendant.

1

images of these pills were recovered from NOB members/associates cellular phones consistent with the sale of the drugs through the gang.

Prior to his arrest in this case, Defendant was arrested in Westbrook, Maine, on or about October 28, 2017, pursuant to a prostitution sting by local police. Defendant was arrested in an SUV with NOB members Moses Cabral and Delven Carvalho-Centeio[2] after officers had stopped a female victim who was being trafficked by Defendant. Another female victim was also present in the SUV. An officer observed that the female victim trafficked by Defendant appeared to be suffering drug withdrawals and also had a bruise on her arm. The victim stated that Defendant had used her drug addiction and violence to coerce her into prostitution activities. She also stated that she had been recruited by Defendant in Boston. All five individuals involved in the Maine incident were identified as Massachusetts residents. The SUV used in the crime had been rented in Massachusetts by Moses Cabral.

On June 16, 2020, Defendant was arrested in this case along with numerous other NOB members/associates. On that same date, a search warrant was executed at an apartment used by Defendant in Attleboro, Massachusetts – the apartment was rented by another identified NOB member/associate. Various documents related to Defendant were seized from the apartment establishing his control of the apartment. In some documents, Defendant had written what appear to be rap lyrics. These lyrics contained incriminatory statements by Defendant; during the investigation, officers/agents identified that NOB members/associates commonly used rap lyrics to brag about crimes committed by the gang.

---

[2] Both Cabral and Carvahlo-Centeio have pled guilty to RICO conspiracy involving the NOB street gang.

Defendant's papers included lyrics identifying his relationship with NOB:

1. "NOB try us n***a.  You getting burried."

2. "Shout out NOB.  All us n***a make plays but don play."

There are lyrics regarding Defendant's involvement in NOB-related drug trafficking and sex trafficking:

1. "Me and my n***as is getting closer to millions every day.  Drug dealing, trafficking sex and drugs.  Guns is on us.  F**k around yo gone."

2. "F***ing with Moe [Moses Cabral[3]] selling thotties [women]."

3. "Selling p***y like pet stores.  We really pimping."

4. "Ya cuffin hoes.  I whipper around.  Sex slaving them."

Investigators also recovered evidence from the apartment demonstrating that Defendant was the source of supply for the blue fentanyl pills distributed by NOB street gang members/associates, including:

1. Hundreds of blue fentanyl pills packaged for delivery;

2. A significant amount of powder fentanyl;

3. Blue cutting agent (as well as other cutting agents); and

4. A commercial pill press consistent with manufacturing the fentanyl pills sold by the NOB gang.

---

[3] As noted above, Cabral was one of the NOB members/associates arrested with Defendant in Maine in 2017.

**ARGUMENT**

    I.    **MOTION TO SEVER** [Doc. No. 292]

Defendant is charged in a multi-count and multi-defendant Superseding Indictment with other NOB members/associates. "The prosecution is entitled to charge and join parties in an indictment on the basis of what it reasonably anticipates to prove against them." *Singleton v. United States*, 789 F.Supp. 492, 496 (D.P.R. 1992). "Joinder is proper where the facts and legal issues overlap enough that the practical benefit of a consolidated trial outweighs each defendant's interest in having guilt considered individually." *Id.*; *see also United States v. Doherty*, 867 F.2d 47, 63 (1st Cir. 1989) ("joinder is proper if there is sufficient overlapping facts or legal issues so that the practical benefits of consolidated trial outweigh each defendant's interest in having his guilt considered separately") (relying on *United States v. Arruda*, 715 F.2d 671, 678 (1st Cir. 1983)); *King v. United States*, 355 F.2d 700, 703-04 (1st Cir. 1966) (cases with overlapping factual and legal issues are "classic examples" of benefits to the court that justify joinder). Defendant does not challenge that the charges against him were properly joined in the Superseding Indictment.

Defendant seeks to sever under Federal Rule of Criminal Procedure 14. The First Circuit has instructed:

> As a rule, persons who are indicted together should be tried together. This practice helps both to prevent inconsistent verdicts and to conserve resources (judicial and prosecutorial). Thus, when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice. The hurdle is intentionally high; recent Supreme Court precedent instructs that a "district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."

*United States v. Flores-Rivera*, 56 F.3d 319, 325 (1st Cir. 1995) (citations omitted). "In considering a motion to sever pursuant to Fed. R. Crim. P. 14, the general rule in the First Circuit Court of Appeals 'is that those indicted together are tried together to prevent inconsistent verdicts and to conserve judicial and prosecutorial resources.'" *United States v. Colburn*, 475 F.Supp.3d 18, 22-23 (D.Mass. 2020) (quoting *United States v. DeCologero*, 530 F.3d 36, 52 (1st Cir. 2008)). "To overcome the presumption in favor of a joint trial, a defendant must demonstrate 'prejudice so pervasive that a miscarriage of justice looms.'" *Id*. at 23 (citation omitted). "Under this stringent standard, the requisite showing of prejudice 'means more than just a better chance of acquittal at a separate trial.'" *Id.* (citation omitted).

Defendant argues that there will be a spillover effect from the violent crimes committed by other co-defendants and that the jury may be become confused. *See* Def. Mot. to Sever at pp. 3-4. The First Circuit has noted that "there is always a risk of some degree of 'garden variety' prejudice in any joint trial and that prejudice of that sort cannot 'in and of itself … suffice' to carry a defendant's burden to establish that failure to sever was an abuse of discretion." *United States v. Martinez*, 994 F.3d 1, 13 (1st Cir. 2021) (citation omitted). "This spillover effect … 'rarely constitutes sufficient prejudice to warrant severance.'" *United States v. Babich*, 2019 WL 163102 at *3 (D.Mass. Jan. 10, 2019) (quoting *United States v. Azor*, 881 F.3d 1, 12 (1st Cir. 2017)); *see also United States v. Yefsky*, 994 F.2d 885, 896 (1st Cir. 1993) ("Incidental spillover prejudice, which is almost inevitable in a multi-defendant trial, does not suffice.").

Defendant argues that "there is no meaningful connection between the charges against [Defendant] and the charges against the co-defendants. There is no evidentiary overlap with the charges faced by" Defendant. *See* Def. Mot to Sever at p. 4. This is simply not accurate. First,

Defendant's drug charge has significant evidentiary overlap with both the NOB gang-related drug conspiracy in Count Two and the NOB-related RICO conspiracy in Count One. As set forth above, Defendant was the source for the blue fentanyl pills distributed by NOB gang members/associates in the drug conspiracy set forth in Count Two. Evidence of the blue fentanyl pills being distributed by the NOB gang has been recovered from almost every Defendant named in Count Two. Evidence of Defendant's possession of hundreds of blue fentanyl pills, powder fentanyl, blue cutting agent and a commercial pill press in an apartment rented by another NOB gang member/associate will be used to prove the overarching drug conspiracy set forth in Count Two. The drug evidence will also be relevant to proving the RICO conspiracy because the NOB gang-related drug conspiracy is evidence of the NOB conspiracy to engage in racketeering activities – drug trafficking is a predicate racketeering crime. On the flip side, evidence of NOB gang members distributing blue fentanyl pills will be used to prove that Defendant possessed the fentanyl seized from the Attleboro apartment with the intent that it would be distributed – i.e., that the fentanyl was being distributed by Defendant's fellow NOB gang members/associates.

Similarly, evidence related to Defendant's violating the Mann Act will be evidence in the RICO conspiracy set forth in Count One. Defendant committed the Mann Act violation with two other NOB gang members (both of whom have pled guilty to RICO conspiracy involving the NOB gang). The Mann Act is a predicate crime for RICO, as is the use of a cellular phone to further the prostitution activities in Maine (*see* 18 U.S.C. § 1952). Again, this evidence supports Count One by establishing that NOB gang members/associates participated in racketeering acts related to prostitution.[4] In addition, the gang-related nature of Defendant's Mann Act charge is

---

[4] Defendant's engaging in sex trafficking with the two other NOB members/associates is not the

also relevant evidence against Defendant because this gang-related evidence confirms the veracity of Defendant's incriminatory lyrics. As discussed above, Defendant wrote that he and other NOB members were engaging in sex trafficking. For example, Defendant wrote: "Me and my n***as is getting closer to millions every day. Drug dealing, trafficking sex and drugs. Guns is on us. F**k around yo gone." Evidence of Defendant's involvement with other NOB members/associates in drug trafficking and sex trafficking confirms that Defendant's lyrics are not fiction or puffery – they are bragging admissions about his gang-related activities, including his sex trafficking activities (or as Defendant refers to it "sex slaving" victims). Thus, contrary to Defendant's claims, there will be significant evidentiary overlap involving the charges against Defendant and the two main charges (Count One and Count Two) involving the other co-defendants.

The significant overlap of the evidence in this case cuts against any claim that the spillover effect warrants severance. The First Circuit has held that "'[w]here evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect.'" *Flores-Rivera*, 56 F.3d at 326 (citation omitted); *Martinez*, 994 F.3d at 13 (stating same and relying on *Flores-Rivera*); *see also Azor*, 881 F.3d at 12 ("[W]here evidence against a defendant might show a defendant's association with his co-defendants even if he were tried alone, the argument for prejudice becomes much weaker."). Any potential spillover prejudice or claimed confusion regarding the charges can be mitigated through appropriate jury instructions. *See, e.g., United States v. Chisholm*, 940 F.3d 119, 128 (1st Cir. 2019) ("[L]imiting instructions are usually sufficient antidotes to potential prejudice.");

---

only example of gang-related sex trafficking.

*United States v. Candelario-Santana*, 834 F.3d 8, 24 (1st Cir. 2016) ("a trial court can safeguard a defendant from potentially prejudicial spillover by delivering jury instructions as to the admissibility of the evidence"); *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004) ("In general, the strong presumption is that jurors are able to compartmentalize evidence by respecting limiting instructions specifying the defendants against whom the evidence may be considered.").

Therefore, Defendant's motion to sever should be denied.

## II.     **MOTION TO DISMISS FOR IMPROPER VENUE** [Doc. No. 293]

Defendant seeks to dismiss the Mann Act charge by claiming that venue for the charge is inappropriate in the District of Massachusetts. Defendant argues that the Mann Act "crime occurred primarily in Maine, and somewhat in New York and New England generally, but not specifically in Massachusetts. *See* Mot. To Dismiss for Venue at p. 4. Defendant concedes that the Superseding Indictment charges him with traveling from Massachusetts to Maine where he was arrested (along with other NOB members/associates) trafficking the female victim. All five individuals who were present at the time of the arrest (the three NOB members/associates and the two female victims) were identified as residents of Massachusetts. The SUV used to facilitate the sex trafficking was rented by Defendant's cohort, Moses Cabral, in Massachusetts. The victim, who was being trafficked by Defendant, confirmed that she had been recruited by Defendant while she was in Boston, and that they had traveled to various locations to engage in prostitution, including Maine.

Defendant cites Federal Rule of Criminal Procedure 18 in support of his motion: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in

8

which the offense was committed." However, the applicable venue statute for the Mann Act charge is 18 U.S.C. § 3237(a) which provides:

> Except as otherwise provided by an enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.
>
> Any offense involving the … transportation in interstate or foreign commerce … is a continuing offense and, except as otherwise provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such … commerce … moves.

The evidence sets forth that the crime began in Massachusetts where all the individuals were residents, where the SUV used in the crime was rented and where the victim stated she was recruited. Thus, per the statute, venue for the Mann Act charge is proper in the District Massachusetts where the crime began. *See, e.g., United States v. Cole*, 262 F.3d 704, 709-710 (8th Cir. 2001) (transportation of a minor under the Mann Act was a continuing offense and could be prosecuted in the district from which the minor was transported); *United States v. Bennett*, 258 Fed.Appx. 671, 686-87 (5th Cir. 2007) (transportation of a minor under the Mann Act was a continuing offense and could be prosecuted in the district from which the minor was transported); *United States v. Horton*, 202 F.Supp. 681, 684-85 (E.D.PA. 1962) (Mann Act is a continuing offense and venue is dictated by 18 U.S.C. § 3237(a)).

### III. **MOTION TO DISMISS FOR LACK OF SPECIFICITY** [Doc. No. 294]

Defendant seeks to dismiss the Mann Act count against him for lack of specificity by arguing that the Superseding Indictment fails to provide him with enough information to apprise him of the charge against him – Defendant makes this argument despite detailing the underlying facts of the Mann Act charge in this motion. Federal Rule of Criminal Procedure 7(c)(1)

requires that an indictment contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." "An indictment need not say much to satisfy these requirements – it need only outline the 'elements of the crime and the nature of the charge so that the defendant can prepare a defense and plead double jeopardy in any future prosecution of the same offense.'" *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018) (citation omitted). "This means that an indictment that tracks a statute's terms is legally sufficient if the indictment itself gives the defendant adequate notice of the charges she must meet." *Id.*; *United States v. Crosby*, 2018 WL 3244071 at *3 (D.Me. July 7, 2018) ("[A]s the Supreme Court has observed, 'an indictment parroting the language of a federal criminal statute is often sufficient.'") (citation omitted). Defendant properly sets forth the standard for this motion that it "rests on the question 'whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" *See* Def. Mot. to Dismiss at pp. 3-4; *see also United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012).

Defendant argues that the "bare bones language in this indictment creates an ambiguity and invites speculation as to what [Defendant] is specifically accused of doing." *See* Def. Mot. to Dismiss at p. 4. This argument is without merit. The Superseding Indictment identifies: (1) that Defendant transported a female victim from Massachusetts; (2) to Maine; (3) for the purposes to engage in prostitution and sexual activity; and (4) that he did so on or about October 28, 2017. *Id*. at p.1. Thus, the Superseding Indictment provides *a specific date* on which Defendant committed the crime in Maine – the date when Defendant was arrested for sex trafficking activities in Maine. This is clearly sufficient information for Defendant to understand the offense to which he is charged, to prepare a defense, and to defend against double jeopardy in

the future.  *See United States v. Eirby*, 262 F.3d 31, 37-38 (1st Cir. 2001) ("In general, an indictment is sufficient if it specifies the elements of the offense charged, fairly apprises the defendant of the charge against which he must defend, and allows him to contest it without fear of double jeopardy.").  The fact that Defendant is fully apprised of the nature of the charged crime is confirmed by his own detailed recitation of the facts underlying the offense (including the victim's initials) in his Motion.  *See* Def. Mot. to Dismiss at p. 2.  Defendant seems to be seeking information as to how the Government intends to prove its case at trial by arguing that the Superseding Indictment should identify the victim in a more detailed manner, the way the victim was transported, and the acts that Defendant is alleged to have committed.  *Id*. at p. 4.  The "'government need not recite all of its evidence in the indictment.'" *Stepanets*, 879 F.3d at 372 (quoting *United States v. Inamorati*, 996 F.2d 456, 477 (1st Cir. 1993)).  "[T]he indictment gives [Defendant] enough info to prepare a defense and to invoke double-jeopardy protections to forestall a later trial on the same charges.  The law requires no more." *Stepanets*, 879 F.3d at 373.  Defendant's motion should be denied.

## CONCLUSION

All three of Defendant's motions are without legal basis and should be denied.


Respectfully submitted,

NATHANIEL R. MENDELL
United States Attorney

Date: October 4, 2021          By: */s/ Michael Crowley*
                                   MICHAEL CROWLEY
                                   Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I, Michael J. Crowley, Assistant United States Attorney, do hereby certify that this document, filed through ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non-registered participants on this date.

/s/ *Michael J. Crowley*
MICHAEL J. CROWLEY
Assistant U.S. Attorney