UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | Docket No. 20-cr-10197-LTS |
| ) | |
| ) | |
| DAMIAN CORTEZ   ) | |
| ) | |

**DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION**

The Defendant Damian Cortez ("Defendant" or "Cortez" or "Damian"), respectfully moves this Court to reconsider its order of detention pending trial, entered on February 4, 2021, and to release him on conditions, which may include, *inter alia*, a third party custodian, electronic monitoring, a curfew, an appearance bond with the posting of property as security, or other such conditions as the Court deems necessary. See 18 U.S.C. §3142©(1)(B)(i), (iv) & (vii).

Background

Cortez initially appeared before the court on June 29, 2020, after having been arrested on a complaint alleging, inter alia, various drug trafficking crimes, RICO conspiracy, and violation of the Mann Act. See Document #1. The Defendant was ordered detained, pending detention hearing. On July 27, 2020, the Court entered an order of voluntary detention, without prejudice, pursuant to stipulation of the parties. See Docket Entry #91. On September 16, 2020, the Grand Jury returned an indictment charging Defendant with possession with intent to distribute 400 grams or more of fentanyl (Count Three) and violation of the Mann Act (Count Seven). See Document #115. On October 14, 2020, the Grand Jury returned a superseding indictment, adding defendants, but the charges against the Defendant remained the same. See Document #145. On January 4, 2021, the Defendant filed a motion for release from custody and in-person detention

hearing. See Document #200. The Magistrate Judge held a detention hearing on February 4, 2021, after which the motion was denied. See Document #209.

On March 4, 2021, the Court set a trial date of March 21, 2022. See Docket Entry #227. On December 14, 2021, eight of the co-defendants in the case (but not Defendant) filed an assented to motion to continue the trial date to "no earlier than July 18, 2022." Document #341. The motion will be addressed at the status conference scheduled before Judge Sorokin on December 16, 2021.

Argument

A magistrate has inherent authority to reconsider its prior order of detention. See *United States* v. *Angiulo*, 775 F. 2d 969, 972-73 (1st Cir. 1985). This Court should do so in this case, where the facts and circumstances favor the Defendant's pretrial release on conditions.

As a general proposition, the Bail Reform Act requires that a court should "bear in mind that it is only a 'limited group of offenders' who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225 at 7, as reprinted in 1984 U.S.C.CA.N. 3182, 3189); see *United States v. Salerno*, 481 U.S. 739, 755 (1987) (suggesting that "detention prior to trial or without trial is the carefully limited exception" to liberty before trial). One charged with a crime is, after all, presumed innocent. See generally *Stack v. Boyle*, 342 U.S. 1, 4 (1951). Due to the crucial interests involved, it follows that a "case-by-case" approach is required at any stage of the case in assessing the propriety of pretrial detention. See *United States v. Gonzales-Claudio*, 806 F.2d 334, 340 (2d Cir. 1986) (discussing due process analysis for evaluating propriety of prolonged pretrial detention, and the interests at stake) (citations omitted), cert. dismissed sub nom., *Melendez-Carrion v. United States*, 479 U.S. 978 (1986).

Cortez's case involves a statutory presumption of detention, and while the Magistrate Judge found that the Defendant had rebutted the presumption, she concluded that "there are no conditions of release that would reasonably assure Mr. Cortez's return to court or the safety of the community." See Document #209, at page 3. Congress enacted the statutory presumptions of detention in the Bail Reform Act of 1984 (BRA) "to detain high-risk defendants who were likely to pose a significant risk of danger to the community if they were released pending trial."[1] But the presumptions of detention have not worked as intended, and federal pretrial detention rates have increased dramatically since 1984.[2] Before the BRA, *less than two percent* of federal arrestees were jailed pending trial.[3] According to the Bureau of Justice Statistics, the detention rate across the country increased from 59% in 1995 5 to 76% in 2010.[4] A recent study by the Administrative Office of the Courts (AO) attributed this "massive"[5] increase in detention rates to the presumptions of detention, especially as they are applied to low-risk defendants.[6] For example, the statutory presumptions in drug and firearm cases applied to *nearly half* of all federal cases each year.[7] If not for the presumptions of detention, low risk defendants "might be released at higher rates."[8] Instead, the presumptions of detention have become "an almost de facto detention order in almost half of federal cases."[9]

Relying on the groundbreaking findings of the AO study, the Judicial Conference's

---

[1] Amaryllis Austin, *The Presumption for Detention Statute's Relationship to Release Rates*, 91 FEDERAL PROBATION 52, 56-57 (2017), archived at https://perma.cc/9HGU-MN2B.
[2] *Id*. at 53.
[3] U.S. Department of Justice, Bureau of Justice Statistics, *Pretrial Release and Detention*: *the Bail Reform Act of 1984* Table 1 (1988), archived at https://perma.cc/CS86-NJA8 (showing 1.7% of federal arrestees were detained pretrial in 1983).
[4] Austin, *supra* note 1, at 53 (citing U.S. Department of Justice Bureau of Justice Statics, *Pretrial detention and Misconduct in Federal District Courts,* 1995-2010 1 (2013), archived at https://perma.cc/U2V5-GYYP.
[5] *Id* at 61
[6] *Id*. at 57
[7] *Id.* at 55 (the drug presumption "applied between 42 and 45 percent of [all federal] cases every year").
[8] *Id.* at 57
[9] *Id.* at 61

Committee on Criminal Law recently determined "that the § 3142(e) presumption was unnecessarily increasing detention rates for low-risk defendants, particularly in drug trafficking cases."[10] To address this problem, the Judicial Conference proposed significant legislative reform that would amend the presumption of detention in drug cases "to limit its application to defendants described therein whose criminal history suggests that they are at a higher risk of failing to appear or posing a danger to the community."[11]

The court in this case cited, *inter alia*, the weight of the evidence, and the lengthy period of incarceration facing Defendant. See Document #209, at page 3. The "weight of the evidence" has been deemed "the least important" of the factors to be considered in a detention hearing.  See *United States* v. *Townsend*, 897 F. 2d 989, 994 (9th Cir. 1990).   Moreover, overemphasis on the seriousness of the charges would mean that no defendant charged with serious drug offenses could ever be released on conditions. Cf. *United States* v. *Dominquez*, 783, F. 2d 702, 706 (7th Cir. 1986) ("few, if any, defendants could ever rebut the presumption of dangerousness and thereby defeat pretrial detention", if defendant is "expected… to demonstrate that narcotics trafficking is not dangerous to the community").

*Conditions of Release That Will Protect the*
*Community And Mitigate Risk of Flight*

The Bail Reform Act requires the Court to impose "the least restrictive [ ] condition, or combination of conditions, that [it] determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(c)(1)(B). The defense submits that there are conditions of release that can be crafted in

---

10 *Report of the Proceedings of the Judicial Conference of the United States* 10 (September 12, 2017), archived at https://perma.cc/B7RG-5J78.
11 *Id.*

this case that will mitigate any danger Cortez may pose or any risk of flight.

The Defendant's personal history includes the lack of any substantial prior record, making him eligible for the "safety valve", 18 U.S.C. § 3553(f). The Defendant has "strong family support in this area and his mother [Maria Cortez] attended his in-person detention hearing. *Notably, he turned himself in on this charge* [emphasis added]." <u>Order Of Detention Pending Trial</u>, Document #209, at page 3. At his detention hearing, Cortez proposed living with his mother, Maria Cortez, at 211 North Street, Randolph, Massachusetts. Maria Cortez owns that property, which is a 2-family residence. Cortez's sister lives in the upstairs unit. Damian Cortez has substantial ties to the community inasmuch as his mother resides in Randolph, his father lives in Quincy, and various siblings live in either Quincy or Randolph. <u>See</u> Pretrial Services Report. Damian's mother has now come forward and agreed to serve as a third party custodian, and, significantly, *to sign a bond in any amount up to $150,000.00 with her property posted as security*, in order to further alleviate any concerns the Court might have about flight and the safety of the community [the property is estimated to have at least $150,000.00 of equity-a formal appraisal and title report will be obtained in accordance with U.S. District Court protocols in the event the Court allows this motion].   Damian's relationship with his family, and particularly his mother, is close, and this added level of security will provide the "reasonable assurance" required by law.

In addition to the added conditions of release, the prolonged pretrial delay in this case warrants a reconsideration of the detention order that was previously entered by the Court. Cortez has been in custody since his arrest June 29, 2020. The Court initially set a trial date of March 21, 2022, but it seems likely that the case will be continued until at least the summer of 2022. By that time Cortez will have been in custody for over two years without the benefit of a

trial

## Conclusion

For the reasons set forth hereinabove, the Court should reconsider its prior order of detention, and release Defendant on pretrial conditions to include a bond signed by his mother and secured by her property in an amount up to $150,000.00 to be determined by the Court. In addition, the conditions could include having Ms. Cortez serve as third party custodian. Finally, the Court could impose restrictions on "personal associations, place of abode, or travel", to include curfews, electronic monitoring, GPS monitoring, and home detention. 18 U.S.C. §3142(c)(1)(B)(iv) & (vii).

Respectfully submitted,

*/s/John F Palmer*
John F. Palmer
B.B.O.#387980
18 Main Street Extension
Suite 201B
Plymouth, MA 02360
Tel: 617-943-2602

## CERTIFICATE OF SERVICE

I, John F. Palmer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on December 15, 2021.

*/s/John F. Palmer*